UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
SANDRA VELEZ

                          Plaintiff,

            -against-                    **MEMORANDUM & ORDER**
                                                  15-CV-4752 (PKC)

CREDIT ONE BANK,

                          Defendant.
---------------------------------------------------------X

PAMELA K. CHEN, United States District Judge:

This case involves telephone calls made by Defendant Credit One Bank ("Defendant") to Sandra Velez's ("Plaintiff") cellular phone, allegedly in pursuit of amounts due and owing on an account between the parties. Defendant argues Plaintiff's claim is governed by an arbitration agreement, which Plaintiff disputes. For the reasons stated herein and on the record at oral argument, the Court grants Defendant's motion to compel arbitration and stay this action pending arbitration.

## *BACKGROUND*

On August 14, 2015, Plaintiff filed suit in this Court, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*[1] Defendant called Plaintiff's cellular phone "on a repetitive and continuous basis" between June and August 2015, using an automatic dialing system and automatic or pre-recorded messages. (Dkt. 1 ¶¶ 13–15.) Plaintiff "has an account with Defendant," but "revoked any consent previously given to call her cellular telephone in July 2015." (Dkt. 1 ¶ 18.)

---

[1] For purposes of this motion, the Court accepts as true "factual allegations in [Plaintiff's] complaint that relate to the underlying dispute between the parties." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012).

1

On September 9, 2015, Defendant filed the pending motion to compel arbitration and stay pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2–4. (*See* Dkts. 6–8.) Defendant alleges that Plaintiff's claim is subject to arbitration pursuant to an underlying credit card agreement between the parties. (*See* Dkt. 7 at 7–8.) Plaintiff opposes the motion, arguing that there is no binding and enforceable contract between the parties, and that even if such a contract exists, the arbitration agreement contained therein is unconscionable and consequently unenforceable. (*See* Dkt. 10 at 1–2; Dkt. 13 at 3.) On January 20, 2016, the Court heard oral argument by the parties on the motion, after which the Court ruled that the motion would be granted and that this matter would be stayed pending arbitration.

## DISCUSSION

**I.   Legal Standard**

The FAA, under which Defendant has moved to compel arbitration, expresses a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Id*. at 24–25. Nevertheless, if "the dispute at issue concerns [either] contract formation" or "whether parties have agreed to submit a particular dispute to arbitration," the court must make an initial determination prior to compelling arbitration. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (alterations omitted) (internal quotation marks and citations omitted). *See also McAllister v. East*, 611 F. App'x 17, 18 (2d Cir. 2015) (summary order) ("Under the framework established by the [FAA], a district court generally must compel arbitration upon determining that a contractually valid arbitration agreement exists under the relevant state law and that the parties' dispute falls within the scope of that agreement.").

In keeping with these principles, the Second Circuit has established a four-part test to determine whether all or part of an action should be sent to arbitration: (1) the district court must determine whether the parties agreed to arbitrate; (2) if they did, the district court must determine the scope of that arbitration agreement (whether the instant dispute falls within that scope); (3) if the plaintiff asserts federal statutory claims, the district court must determine whether Congress intended those claims to be nonarbitrable; and (4) if only some, but not all, of the plaintiff's claims are arbitrable, the district court must decide whether to stay the balance of the proceedings pending arbitration. *See JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987). Because Plaintiff asserts a single claim, the Court analyzes only the first three prongs.[2]

## II. Agreement to Arbitrate

In opposition to Defendant's motion to compel arbitration, Plaintiff alleges that there is no agreement to arbitrate. Plaintiff's argument is two-fold: first, she challenges the formation and validity of the contract asserted by Defendant, and second and alternatively, she challenges the arbitration agreement itself as unconscionable, even if there is a valid contract. (*See* Dkt. 13 at 3.) The Court addresses these challenges in turn, under applicable New York contract principles.[3] *See Schnabel*, 697 F.3d at 119 ("Whether or not the parties have agreed to arbitrate is a question of state contract law.").

---

[2] The Court addresses Defendant's motion to stay separately, *infra*, and not pursuant to the fourth prong.

[3] The parties agree that New York law governs. (Dkts. 13, 14.)

3

### a. *Plaintiff is Not Entitled to a Trial on the Issue of Contract Formation*

As an initial matter, the Court finds that Plaintiff has not demonstrated that she is entitled to a trial on the issue of whether she entered into an arbitration agreement with Defendant. Although the FAA stipulates that, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof[]," 9 U.S.C. § 4, the Second Circuit has made clear that "a trial is warranted only if there exists one or more genuine issues of material fact regarding whether the parties have entered into such an agreement," *Schnabel*, 697 F.3d at 118. *See also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment," namely that "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.") (citations omitted). As discussed below, because the Court determines that there exists no genuine issue of material fact regarding whether the parties entered into an agreement to arbitrate, no trial is necessary.[4]

### b. *Formation and Validity of the Contract*

Plaintiff argues that she is not bound by the credit card agreement on which Defendant relies in moving to compel arbitration, because Defendant has not shown that "both parties intend[ed] to be bound to the contract" or that "Plaintiff knowingly agreed to arbitration." (*See* Dkt. 10 at 5.)[5] Yet, Plaintiff does not dispute that she received a credit card from Defendant,

---

[4] In so holding, the Court declines to address the Third Circuit authority cited by Plaintiff in support of her alleged "right to have the issue presented to a jury" (Dkt. 10 at 5 (internal quotation marks omitted)), decisions that, as Plaintiff acknowledges, the Court is not bound to follow (Dkt. 13 at 2 (acknowledging that New York, rather than Pennsylvania, law governs the dispute at issue)).

[5] In support of her argument, Plaintiff cites *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43 (N.Y. App. Div. 2009) for the proposition that "[t]o establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound . . . . That meeting of the minds must include agreement on all essential terms .

accompanied by a "**VISA/MASTERCARD CARDHOLDER AGREEMENT, DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT**" ("Cardholder Agreement") (Dkt. 7-1 at 11–17[6] (emphasis in original)),[7] or that she then activated and made charges to that credit card, as well as payments to Defendant (Dkt. 7-1 at 18–23).

New York law clearly establishes that "[u]sing a credit card and making payments to the credit provider binds the cardholder to the terms and conditions of card use." *Anonymous v. JP Morgan Chase & Co.*, No. 05 Civ. 2442, 2005 U.S. Dist. LEXIS 26083, at *9–10 (S.D.N.Y. Oct. 29, 2005). *See also Bank of Am. v. Jarczyk*, No. 00-CV-910A, 2001 U.S. Dist. LEXIS 16868, at *11 (W.D.N.Y. Sept. 20, 2001) ("Because it is the *use* of the credit card, and not the *issuance*, that creates an enforceable contract, each time a cardholder uses his credit card, he accepts the offer by tendering his promise to perform (i.e. to repay the debt upon the terms set forth in the credit card agreement).") (emphases in original); *Johnson v. Chase Manhattan Bank USA, N.A.*, 784 N.Y.S.2d 921 (N.Y. Sup. Ct. 2004), *aff'd* 786 N.Y.S.2d 302 (N.Y. App. Div. 2004) ("[W]hether or not plaintiff indicated his assent to the terms of the Cardmember Agreement, his use of the card for 12

---

. . . ." (Dkt. 10 at 5 (internal quotation marks and citations omitted).) But Plaintiff fails to address the New York case law discussed *infra*, which holds that these contract formation principles are satisfied by an individual's use of a credit card and payment to the credit provider, such as Plaintiff's use of Defendant's credit card and payments made to Defendant therefor.

[6] All page references to Docket 7-1 (Affidavit of Gary Harwood in Support of Credit One Bank's Motion to Compel Arbitration and to Stay) correspond to page numbers generated by the Electronic Court Filing ("ECF") system, and not to the document's internal pagination.

[7] Indeed, in response to the Court's question at the January 20, 2016 oral argument, "[i]f [Plaintiff's] claim is that she didn't get any cardholder agreement or a[n] arbitration agreement, what terms if any did she think she was bound by with respect to the use of the card?", Plaintiff's counsel stated, "I am not claiming that she didn't get anything. What I am saying is that the document presented today [*i.e.*, the Cardholder Agreement] is not sufficiently proven to be the terms that actually do govern . . . ." On that issue, defense counsel confirmed that the Cardholder Agreement submitted by Defendant was a standard form used with every credit card account and was the same one sent to Plaintiff in or about March 2015.

5

years after receiving the Agreement provides more than sufficient evidence of his consent to its terms.").

Indeed, as Defendant noted in a submission to this Court (*see* Dkt. 12), a district court of this Circuit recently compelled arbitration on nearly identical facts as those before the Court. In *Salerno v. Credit One Bank, N.A.*, No. 15-CV-516, 2015 U.S. Dist. LEXIS 146748 (W.D.N.Y. Oct. 28, 2015), a TCPA action, Credit One Bank, the same defendant as in this action, mailed a credit card to the plaintiff and enclosed with the card the same Cardholder Agreement at issue here, including the arbitration agreement. *Id*. at *2–6. After receipt, the plaintiff activated her account and began making charges thereto. *Id*. at *6. The district court found an agreement to arbitrate, as "it is clear under New York law that regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account." *Id*. at *9–10.

Plaintiff, however, contends that she did not have notice of the terms of the arbitration agreement. (*See* Dkt. 10 at 2; Dkt. 13 at 3.) This contention, without more, is unavailing. Defendant's factual assertion, which Plaintiff does not contest, in the affidavit of Gary Harwood, Defendant's Vice President of Portfolio Services, that "Credit One issued a Visa/Mastercard credit card to Plaintiff and mailed Plaintiff the card, along with a copy of the [Cardholder Agreement]" (Dkt. 7-1 at 2), provides "compelling circumstantial evidence" that Defendant did, in fact, send Plaintiff the Cardholder Agreement between March 9 and 19, 2015, and thereby put Plaintiff on notice of the terms governing her use of the credit card. *See Salerno*, 2015 U.S. Dist. LEXIS 146748, at *10–11 (finding that "[m]atters set forth in the sworn affidavits of Credit One corporate officers Gary Harwood (Vice President of Portfolio Services) and Vicki Scott (Vice President of Collections), and the documents attached thereto, provide compelling circumstantial evidence of

Credit One's compliance with its customary policy to enclose a copy of the cardholder agreement within the same envelope used to mail the customer the credit card for activation"). The Cardholder Agreement begins on the second page of the credit card materials sent to Plaintiff (the first textual page following the page of applicable interest rates and fees). (Dkt. 7-1 at 12.) Not only did the Cardholder Agreement highlight the arbitration agreement in its very title, it also makes clear that "[b]y requesting and receiving, signing or using [the] Card, [Plaintiff] agree[d]" to the terms that followed, which included the arbitration agreement. (*Id.*) The Cardholder Agreement also states in the second paragraph immediately following the title: "**IMPORTANT NOTICE:** Please read the Arbitration Agreement portion of this document for important information about your and our legal rights under this Agreement." (*Id.* (emphasis in original).) Plaintiff offers no contrary evidence or even claim that she did not receive the Cardholder Agreement submitted by Defendant.[8] Thus, the Court concludes that Plaintiff was fairly apprised of the terms and conditions attaching to the use of the credit card sent to her by Defendant.

To the extent Plaintiff's argument regarding notice boils down to her having failed to actually *read* the terms of the agreement, this argument, too, is unavailing. The court in *Salerno* rejected precisely this argument. *See Salerno*, 2015 U.S. Dist. LEXIS 146748, at *9–10 (finding

---

[8] Instead of raising a factual dispute about whether Plaintiff received the Cardholder Agreement, Plaintiff's argument is based on the initial *solicitation* materials she received, which she claims did not reference the arbitration agreement at issue and "[did] not contain any evidence of the terms and conditions to which Plaintiff agreed." (Dkt. 10 at 5–6 (arguing that the solicitation materials "neither provide[] sufficient language for Plaintiff and Defendant to have arrived at a meeting of the minds, nor indicate[] that Plaintiff accepted this language and intended to be bound to a clause that was not defined in the application").) However, whether these solicitation materials provided notice of the arbitration term is immaterial to the Court's determination of whether there existed an arbitration agreement, given that, as discussed *supra*, Plaintiff has failed to raise a genuine dispute about her receipt of a credit card issued by Defendant, along with the Cardholder Agreement, and her subsequent use of that credit card, which conduct is sufficient, under New York law, to bind Plaintiff to the terms of that agreement.

plaintiff bound by arbitration agreement despite plaintiff's argument that she "does not recall ever receiving it"). This Court similarly rejects Plaintiff's argument here, because the fact "[t]hat a consumer does not read the agreement or thereafter claims he or she failed to understand or appreciate some term therein does not invalidate the contract . . . ." *Brower v. Gateway 2000*, 676 N.Y.S.2d 569, 573 (N.Y. App. Div. 1998) (defendant mailed products to plaintiff and therein included terms and conditions stating that consumers who kept goods beyond 30 days would accept those terms and conditions). *See also Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (N.Y. App. Div. 2004) (because plaintiff "continu[ed] to use her credit cards," she was "bound by the arbitration provision even if she did not read it"). Under New York law, in light of Plaintiff's use of, and payments on, Defendant's credit card, Plaintiff agreed to the terms of the Cardholder Agreement, including the arbitration agreement.[9]

### c. *Unconscionability of Arbitration Agreement*

Plaintiff argues in the alternative that, even if the parties agreed to arbitrate, the Court should not compel arbitration because the arbitration agreement is unconscionable. (Dkt. 10 at 6–7.) This argument cannot help Plaintiff here.

Unconscionability of an agreement under New York law has two elements: (1) substantive, *i.e.*, unconscionability in the content of the contract; and (2) procedural, *i.e.*, unconscionability in the contract formation process and the lack of meaningful choice. *See Matter of Conifer Realty LLC (EnviroTech Servs., Inc.)*, 964 N.Y.S.2d 735, 739 (N.Y. App. Div. 2013). In other words, a

---

[9] The Court notes that Plaintiff's written response expressly admits the existence of some kind of contractual relationship between the parties (*see* Dkt. 1 ¶ 18 ("Plaintiff has an account with Defendant . . . ."), and as previously discussed, at oral argument, Plaintiff's counsel made clear that she was "not claiming that [Plaintiff] didn't get anything." Indeed, Plaintiff has assiduously avoided identifying what terms, if any, she believed governed her use of the credit card account, if not the Cardholder Agreement, even when her counsel was asked that question directly during oral argument.

finding of unconscionability generally requires some showing of "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (internal quotation marks and citations omitted).

The Court finds that Plaintiff has not met her burden to demonstrate unconscionability of the arbitration agreement. The terms of the arbitration agreement bind both parties. (*See* Dkt. 7-1 at 16 (The arbitration agreement "**PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. . . .**") (emphasis in original).) There is nothing in the record to suggest that arbitration is more favorable to Defendant than to Plaintiff. *See Matter of Conifer Realty LLC*, 964 N.Y.S.2d at 739 (rejecting unconscionability argument even where agreement "does not contain a reciprocal arbitration provision" because there was nothing in the agreement that suggested the terms were "*unreasonably* favorable" to the party seeking to enforce the contract) (emphasis in original) (internal quotation marks omitted). Plaintiff points to the fact that "Defendant reserves itself the right to change any of the terms of the contract at any time, presumably even that of the arbitration clause, and grants no such right to Plaintiff" as a demonstration of the "unequal bargaining power [which] rises to [the] level of procedural unconscionability." (Dkt. 10 at 7.) However, this contractual term, in itself, does not render the Cardholder Agreement "*unreasonably* favorable" to Defendant, especially given that Plaintiff retained the ability to reject any changes and close her account (*see* Dkt. 7-1 at 12), and/or switch to another credit card company, *see Johnson*, 784 N.Y.S.2d 921 (finding enforceable an arbitration agreement where defendant bank reserved right to change terms of agreement and did, in fact, send plaintiff changes, including a change to the arbitration agreement); *Ranieri v. Bell Atl. Mobile*, 759

9

N.Y.S.2d 448, 449 (N.Y. App. Div. 2003) ("Inequality of bargaining power alone does not invalidate a contract as one of adhesion when the purchase can be made elsewhere.") (citation omitted). Furthermore, Plaintiff fails to explain how Defendant's ability to unilaterally change the terms of the Cardholder Agreement was unreasonably favorable to Defendant over Plaintiff specifically with respect to the arbitration agreement.

While Plaintiff claims she had "no choice but to accept the arbitration clause should she want the agreement to be in effect" (Dkt. 10 at 7), Plaintiff fails to show that she lacked a meaningful choice in choosing Defendant's credit card services. There is no evidence that Defendant engaged in high-pressure sales tactics to induce Plaintiff to agree to the terms of the Cardholder Agreement or even to activate her card, nor is there anything to suggest that Plaintiff was in any way compelled to apply for or use Defendant's credit card in particular. *See Matter of Conifer Realty LLC*, 964 N.Y.S.2d at 740 (rejecting unconscionability argument because the record was "devoid of any indication" that respondent "engaged in high-pressure sales tactics" or that petitioner could not have retained other services). Since Plaintiff has not "offer[ed] evidence that [s]he could not have chosen another [credit card] service provider," it "does not avail [her] to argue that the arbitration provision is unconscionable." *Ranieri*, 759 N.Y.S.2d at 449.

Finally, Plaintiff contends that the arbitration agreement is procedurally unconscionable because she had no notice of its terms. To the extent this argument is the same as Plaintiff's claim about contract formation, *i.e.*, that the evidence is insufficient to show, or at least dispel any material factual dispute, that Plaintiff received the Cardholder Agreement, the Court has already rejected that argument. Furthermore, given the undisputed evidence that Plaintiff received the Cardholder Agreement, she cannot claim that she did not receive notice of the arbitration agreement. The Cardholder Agreement conspicuously and "specifically call[s] the reader's

attention to those additional [arbitration] terms and conditions and advise[s] that such provisions are part and parcel thereof[]" in multiple places. *Matter of Conifer Realty LLC*, 964 N.Y.S.2d at 739. First, the Cardholder Agreement notes the arbitration agreement in its title. (*See* Dkt. 7-1 at 12 ("**VISA/MASTERCARD CARDHOLDER AGREEMENT, DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT**") (emphasis in original).) Then, in the second paragraph following the title, the Cardholder Agreement stipulates: "**IMPORTANT NOTICE:** Please read the Arbitration Agreement portion of this document for important information about your and our legal rights under this Agreement." (Dkt. 7-1 at 12 (emphasis in original).) Three pages later, the Cardholder Agreement again points Plaintiff to the Arbitration Agreement: "**30. ARBITRATION AGREEMENT:** The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement." (Dkt. 7-1 at 15 (emphasis in original).) On the next page, the arbitration agreement itself begins with the following note:

> **PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**
> (Dkt. 7-1 at 16 (emphasis in original).)

While Plaintiff attempts to recast this clause as one "buried on the penultimate page of an adhesive contract" written "in tiny print" (Dkt. 10 at 7), in fact the Cardholder Agreement repeatedly points Plaintiff, in all-caps and bolded text, to the arbitration agreement, which is written in precisely the same size print as the rest of the Cardholder Agreement. *See Anonymous*, 2015 U.S. Dist. LEXIS 26083, at *16 (rejecting unconscionability argument where arbitration

agreement was "clearly set out in all-caps following a heading in all-caps and bold print titled 'Arbitration Agreement'" and was "clearly written").

In short, there is no evidence that Defendant put Plaintiff "over a barrel with respect to the execution of the contract[] at issue." *Matter of Conifer Realty LLC*, 964 N.Y.S.2d at 740. Therefore, the Court rejects Plaintiff's argument that the arbitration agreement is unconscionable and concludes that the parties have agreed to arbitrate pursuant to the terms of the Cardholder Agreement, including the arbitration agreement therein.

### III. Scope of Arbitration Agreement

The Court turns to the question of whether Plaintiff's claim here falls within the scope of the parties' agreement to arbitrate. To determine whether the parties agreed to arbitrate a particular dispute, the Second Circuit requires that courts "classify the particular [arbitration] clause as either broad or narrow[.]" If broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *JLM Indus.*, 387 F.3d at 172 (citation omitted).

The clause at issue here is plainly broad. The agreement lists the following under "***Claims Covered***":

> Claims subject to arbitration include, but are not limited to, disputes relating to the . . . handling . . . of your account; any . . . communications relating to your account; . . . billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your account; . . . and any other matters relating to your account . . . or the resulting relationships between you and us. . . . Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief). Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship. (Dkt. 7-1 at 16.)

This language sweeps in a wide universe of potential claims, and is just as expansive as language other courts have characterized as "broad." *See JLM Indus.*, 387 F.3d at 172 (finding broad arbitration clause where it encompassed "any and all differences and disputes of whatsoever nature arising out of" the contract at issue) (internal quotation marks omitted); *Salerno*, 2015 U.S. Dist. LEXIS 146748, at *12 (describing same arbitration agreement as "extremely broad, encompassing any dispute relating to the handling of the account"). Therefore, a presumption of arbitrability of the instant dispute arises, and the Court must compel arbitration of even a collateral matter if Plaintiff's alleged TCPA claim implicates contract construction or the parties' rights and obligations under the Cardholder Agreement. *See JLM Indus.*, 387 F.3d at 172. The Court finds that it does.

Plaintiff's TCPA claim is premised upon Defendant having made "repetitive and continuous" phone calls to Plaintiff's cellular phone. (Dkt. 1 ¶¶ 13–15.) Defendant alleges, and Plaintiff concedes, that these calls were made "when attempting to collect on [Plaintiff's] delinquent account" with Defendant. (Dkt. 7 at 7.)[10] Plaintiff's asserted damages clearly "could not have [been] suffered . . . if [she] had not entered into" the Cardholder Agreement with Defendant. *See JLM Indus.*, 387 F.3d at 175. Therefore, the instant dispute "aris[es] out of" the contract and is "within the scope" of the arbitration agreement within the Cardholder Agreement. *Id*. (internal quotation marks omitted). *See also Salerno*, 2015 U.S. Dist. 146748, at *12–13 (finding TCPA claims within the scope of the same arbitration agreement at issue here, because of "the breadth" of the language therein "and in light of the federal policy requiring courts to construe arbitration clauses as broadly as possible") (internal quotation marks and citation omitted).

---

[10] At oral argument, in response to the Court's characterization of Defendant's calls to Plaintiff as relating to her delinquent account, Plaintiff's counsel conceded that Plaintiff was "not mak[ing] a scope argument[.]"

## IV. Whether TCPA Claim Is Arbitrable

The Court turns next to the third part of the Second Circuit test: whether the federal statutory claim at issue here is properly arbitrable. The Court finds that it is. The FAA "requires courts to enforce agreements to arbitrate according to their terms," "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (U.S. 2012) (internal quotation marks and citation omitted). "The burden is on the party opposing arbitration" (in this case, Plaintiff) to demonstrate that there exists such a contrary congressional command. *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

Plaintiff has made no such showing here. Plaintiff proffers no argument or evidence, based on the text or legislative history of the TCPA or relevant case law, that Congress meant to override the FAA's mandate and render TCPA claims non-arbitrable. Indeed, courts in this Circuit that have considered TCPA claims in the context of motions to compel arbitration have found no Congressional intent to render these claims non-arbitrable. *See, e.g., Moore v. T-Mobile USA Inc.*, 548 F. App'x 686, 687 (2d Cir. 2013) (summary order) (affirming district court's order finding TCPA claims subject to mandatory arbitration); *Salerno*, 2015 U.S. Dist. LEXIS 146748, at *13–14 ("[T]he few courts that have considered the issue have found nothing in the text or legislative history of the TCPA to suggest that Congress intended TCPA claims to be non-arbitrable."). Therefore, the Court finds that Plaintiff's TCPA claim is arbitrable under this third prong.

## V. Staying the Instant Proceedings

Because the Court grants Defendant's motion to compel arbitration as to Plaintiff's sole claim in this matter, the Court also grants Defendant's request to stay this action pending

arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015) (The FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay [is] requested.").

## *CONCLUSION*

Defendant's motion to compel arbitration and stay is GRANTED. These proceedings are stayed pending arbitration of Plaintiff's TCPA claim. The parties are directed to inform the Court of any resolution of the arbitration proceedings, or any other event, that would affect the stay of this matter.

SO ORDERED.

                                              */s/ Pamela K. Chen*
                                              PAMELA K. CHEN
                                              United States District Judge

Dated: January 25, 2016
       Brooklyn, New York